UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ORITANI BANK                          :
370 Pascak Road                       :
Washington Township, NJ 07676         :
                                      :
              Plaintiff,              :        Civil Action
                                      :
        v.                            :        No.
                                      :
JONATHAN GREENWALD                    :
3370 NE 190th Street,                 :
Aventura, FL 33180;                   :
                                      :
        and                           :
                                      :
ROBERT MAYNARD                        :           **FILED**
330 West 55th Street,                 :          **SCRANTON**
New York, NY 10019;                   :
                                      :          MAR 1 8 2013
        and                           :
                                      :          Per_____
MAYGREEN PROPERTIES LLC               :              DEPUTY CLERK
112 Pocono Boulevard, Suite 15        :
Mt. Pocono, PA 18344                  :
                                      :
              Defendants              :

_____

CIVIL ACTION COMPLAINT

        Plaintiff Oritani Bank, by its counsel, Weir & Partners LLP, brings this Civil Action

against Defendants Jonathan Greenwald, Robert Maynard, and Maygreen Properties LLC and in

support thereof says:

The Parties

        1.      Plaintiff Oritani Bank is a New Jersey state charted bank with its principal place

of business located at 370 Pascak Road, Washington Township, NJ 07676.

        2.      Defendant Jonathan Greenwald is an adult individual residing at 3370 NE 190th

1

Street, Aventura, FL 33180.

3.      Defendant Robert Maynard is an adult individual residing at 330 West 55th Street, New York, NY 10019.

4.      Defendant Maygreen Properties LLC is a Pennsylvania Limited Liability Company with an address of 112 Pocono Boulevard, Suite 15, Mount Pocono, PA 18344. Upon information and belief, Maynard and Greenwald are the sole members of Maygreen.

Jurisdiction and Venue

5.      This Court has subject matter jurisdiction of this civil action under and pursuant to 28 U.S.C. § 1332 (a)(1) inasmuch Plaintiff is a citizen of the State of New Jersey, Defendant Maygreen's sole members are citizens of the State of New York and the State of Florida, respectively, Defendant Maynard is a citizen of the State of New York, Defendant Greenwald is a citizen of the State of New York, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in this District, and Defendants are subject to personal jurisdiction here.

Facts

7.      On or about April 28, 2008, Plaintiff extended a loan to HACAG, LLC (the "Borrower") in the principal amount of $1,920,000.00 (the "Loan") which Loan is evidenced, and was to be repaid in accordance with, that certain mortgage note dated April 28, 2008 in the original principal amount of $1,920,000.00 (the "Note"), which Note was executed and delivered to Plaintiff by the Borrower. A true and correct copy of the Note is attached hereto as Exhibit

"A" and made a part hereof.

8.      On or about April 28, 2008, Defendants executed and delivered to Plaintiff a Guaranty ("Guaranty") under the terms of which Defendants became the unlimited and unconditional sureties for all obligations, indebtedness and liabilities of the Borrower to Plaintiff under the Note. A true and correct copy of the Guaranty is attached hereto as Exhibit "B" and made a part hereof.

9.      The Borrower defaulted under the terms of the Note and Mortgage by its failure to make payments of interest and principal when due on November 1, 2012, December 1, 2012, and January 1, 2013.

10.     By letter dated January 11, 2013, Plaintiff's then counsel notified the Borrower of a default under the terms of the Note by virtue of the Borrower's failure to make payments of interest and principal when due. A copy of the default notice is attached hereto as Exhibit "C" and made a part hereof.

11.     Notwithstanding demand for payment, the Borrower has failed and/or refused to comply with its obligations under the Note and Mortgage.

12.     As a consequence of the Borrower's failure to cure the forgoing default the following amounts are now due and owing to Plaintiff:

| | |
|---|---|
| Principal | $1,802,918.79 |
| Late fees | $    5,501.04 |
| Interest thru 2/28/2013 | $  88,170.14 |
| Prepayment fee (3%) | $  54,087.56 |

Interest continues to accrue at the per diem amount of $740.93, plus costs of suit and attorney's fees until paid in full.

13.    Under the Guaranty, Defendants are jointly and severally liable for all amounts owing to Plaintiff by the Borrower under the Note.

14.    In addition to the amounts owing under the Note, Plaintiff is entitled to recover from Defendants all of its legal fees and costs incurred in its efforts to enforce Defendants' obligations under the Guaranty.

15.    Defendants have failed and/or refused to honor their obligations to Plaintiff under the Guaranty.

COUNT I - Breach of Contract

Oritani Bank v. Jonathan Greenwald

16.    Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 15 of this Complaint as though set forth at length herein.

17.    Under the Guaranty, Greenwald agreed to irrevocably and unconditionally guaranty to Plaintiff prompt payment when due of all present or future obligations or liabilities of the Borrower under the Note.

18.    Greenwald has breached his obligations under the Guaranty by failing to pay the guaranteed amount of the Loan.

19.    As a result of the foregoing, Plaintiff is entitled to judgment against Greenwald in the amount of $1,802,918.79 plus late fees, prepayment fees, pre-judgment and post-judgment interest, attorneys' fees, and costs of suit.

WHEREFORE, Plaintiff Oritani Bank demands judgment in its favor and against Defendant Jonathan Greenwald in the amount of $1,802,918.79, plus interest at the per diem rate of $740.93, costs of suit and attorney's fees.

4

## COUNT II - Breach of Contract

### Oritani Bank v. Robert Maynard

20.     Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 20 of this Complaint as though set forth at length herein.

21.     Under the Guaranty, Maynard agreed to irrevocably and unconditionally guaranty to Plaintiff prompt payment when due of all present or future obligations or liabilities of the Borrower under the Note.

22.     Maynard has breached his obligations under the Guaranty by failing to pay the guaranteed amount of the Loan.

23.     As a result of the foregoing, Plaintiff is entitled to judgment against Maynard in the amount of $1,802,918.79 plus late fees, prepayment fees, pre-judgment and post-judgment interest, attorneys' fees, and costs of suit.

WHEREFORE, Plaintiff Oritani Bank demands judgment in its favor and against Defendant Robert Maynard in the amount of $1,802,918.79, plus interest at the per diem rate of $740.93, costs of suit and attorney's fees.

## COUNT III - Breach of Contract

### Oritani Bank v. Maygreen Properties, LLC

24.     Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 24 of this Complaint as though set forth at length herein.

25.     Under the Guaranty, Maygreen Properties, LLC agreed to irrevocably and unconditionally guaranty to Plaintiff prompt payment when due of all present or future obligations or liabilities of the Borrower under the Note.

26.     Maygreen Properties, LLC has breached its obligations under the Guaranty by

failing to pay the guaranteed amount of the Loan.

27.    As a result of the foregoing, Plaintiff is entitled to judgment against Maygreen Properties, LLC in the amount of $1,802,918.79 plus late fees, prepayment fees, pre-judgment and post-judgment interest, attorneys' fees, and costs of suit.

WHEREFORE, Plaintiff Oritani Bank demands judgment in its favor and against Defendant Maygreen Properties, LLC in the amount of $1,802,918.79, plus interest at the per diem rate of $740.93, costs of suit and attorney's fees.

Submitted by:

WEIR & PARTNERS LLP

By: _____

Walter Weir, Jr. Esquire
PA Attorney ID No. 23137
The Widener Building, Suite 500
1339 Chestnut Street
Philadelphia, PA 19107
(215) 665-8181
wweir@weirpartners.com
*Attorneys for Plaintiff*

Dated: March 15, 2013

Exhibit "A"

<u>**MORTGAGE NOTE**</u>

$1,920,000.00                                      Roseland, New Jersey
                                                   April 28, 2008

**BORROWER: HACAG, LLC,** a Pennsylvania limited liability company, having an address at:

| | |
|---|---|
| Address: | 112 Pocono Blvd. |
| | Suite 15 |
| Municipality: | Mt. Pocono |
| State: | Pennsylvania |
| Zip: | 18344 |

(from now on called **"Borrower"** or **"Borrowers"**) is borrowing money from

**LENDER:  ORITANI SAVINGS BANK**

| | |
|---|---|
| Address: | 370 Pascack Road, P.O. Box 1329 |
| Municipality: | Township of Washington |
| State: | New Jersey |
| Zip: | 07676-1329 |

(from now on called **"Lender"**)

The Lender and any other holder of this Note may transfer this Note.  The word Lender includes the original Lender and anyone who takes this Note by transfer.

1.    **BORROWER'S PROMISE TO PAY:**

In return for this loan, the Borrower promises to pay to the order of Lender the principal sum of **ONE MILLION NINE HUNDRED TWENTY THOUSAND AND 00/100 ($1,920,000.00) DOLLARS** (the **"Loan"**), together with interest on the unpaid principal at the rate set forth herein (the "Interest Rate"), fees and other charges payable as provided below.

2.    **TERM:**

The term of the Loan shall be until **May 1, 2018** (**"Loan Term"**), at which time the entire principal amount advanced,

Case 3:13-cv-00716-MEM   Document 1   Filed 03/19/13   Page 9 of 33

plus unpaid interest, fees and other amounts and charges specified herein shall be due and payable.

3. **INTEREST:**

From the commencement of the Loan Term, the Borrower shall pay interest on the unpaid principal amount at the Interest Rate of **six (6.00%) percent** per annum, subject to adjustment in accordance with Section 5 below. After any default, interest shall accrue at the rate set forth in Section 10 of this Note.

4. **PAYMENTS:**

The Borrower shall make consecutive monthly payments of interest in arrears and principal on all monies advanced under this Note, based on a **thirty (30) year** amortization schedule, in the amount of **$11,511.37** commencing on **June 1, 2008**, along with any required monthly escrow payments, and continuing on the first day of each and every month thereafter until **May 1, 2018**, (the "**Maturity Date**") on which date the entire balance of principal and interest then unpaid shall become due and payable. Said payments shall be applied first to escrows and other amounts due under the Note and Mortgage, then to interest, and lastly to principal. Interest from the date of closing to the end of the month of closing shall be due and payable at the Loan closing. Interest on the principal shall be calculated on the basis of a 360 day year. All payments shall be made to Lender at the address shown above, or to such other address as may be required by Lender.

5. **PREPAYMENT:**

The principal sum evidenced by this Note may not be prepaid, in whole or in part, at any time during the Loan Term except as follows: Borrower shall have the right to make prepayments upon payment of a premium (the "**Prepayment Premium**") in the amount of five (5%) percent of the prepayment if made prior to May 1, 2010, four (4%) percent of the prepayment if made on or after May 1, 2010 but prior to May 1, 2012, three (3%) percent of the prepayment if made on or after May 1, 2012 but prior to May 1, 2013, two(2%)percent of the prepayment if made on or after May 1, 2013 but prior to May 1, 2014, and one (1%) percent of the prepayment if made on or after May 1, 2014 but prior to May 1, 2015.

ROS:923960.4/ORI012-251645

Borrower agrees that if an Event of Default shall occur under this Note, the Mortgage or the Loan Documents, and the maturity hereof is accelerated, then a tender of payment by Borrower or any entity related to or affiliated with Borrower or by anyone on behalf of the Borrower of the amount necessary to satisfy all sums due hereunder (including, without limitation, any sums due on any judgment rendered in any foreclosure action) made at any time prior to, during or after a judicial or public sale of the real and/or other property mortgaged under the Mortgage, shall constitute an evasion of the payment terms hereof and shall be deemed to be a voluntary prepayment thereunder, and any such payment, to the extent permitted by law, therefore must include the Prepayment Premium. The foregoing fee is agreed by Borrower to be liquidated damages to compensate Lender for the loss of the investment, and not a penalty. For the purposes of this paragraph, Borrower shall be deemed to have no right of prepayment until the maturity date.

6. **LATE CHARGE:**

If the Lender does not receive any monthly payment within ten (10) days of its due date, then for each such late payment the Borrower shall pay a late charge. The late charge shall be **eight (8.00%) percent** of the unpaid monthly amount. Acceptance by Lender of a late payment shall not be deemed or considered an election of remedies or waiver by Lender of rights at law, or under this Note or the Mortgage.

7. **MORTGAGE AS SECURITY:**

As security for the payment of this Note, the Borrower is giving a mortgage (the **"Mortgage"**) to the Lender dated the date of this Note and is entering into certain other agreements collateral to this loan, more particularly described in the Mortgage (collectively, the **"Loan Documents"**). The Mortgage covers the property (the **"Premises"**) owned by the Borrower at:

|                    |                                  |
|--------------------|----------------------------------|
| Address:           | 22 Faith Drive                   |
| Municipality:      | Butler Township                  |
| County and State:  | Luzerne County, Pennsylvania     |
| PIN:               | 6-S7-00A-08J                     |

The Premises are more particularly described in the Mortgage. This Note shall evidence and the Mortgage shall secure the indebtedness described herein and any future loans or advances that may be made to or on behalf of the Borrower by the Lender at any time or times hereafter under the Mortgage and any such loans or advances shall be added to and shall bear interest at the same rate per annum as the principal indebtedness hereunder subject to any increase expressly provided for in this Note or the Mortgage.

8.   **PAYMENT OF TAXES AND OTHER CHARGES:**

    (a)   Borrower agrees with Lender:  (i) to pay to the Lender, at the time of each monthly payment, one-twelfth (1/12th) of the current annual taxes and water and sewer charges levied and assessed against the Premises and to make tax reserve payments in such amounts and at such time or times as the Lender shall require; (ii) to claim no deduction upon the assessed value of such Premises on account of the monies owing hereon; (iii) to pay all taxes, assessments, water and sewer charges and other governmental charges levied or assessed against the Premises not already paid to Lender in accordance with 8(a)(i) above, within ten (10) days after the same shall have become due and payable; (iv) to keep the building on the Premises insured for the benefit of the Lender as more particularly set forth in the Mortgage and to maintain such other insurance as may be required under the Mortgage, by insurers and in amounts approved by the Lender, and to deliver such policy or policies of insurance to the Lender or at the sole discretion of Lender, to pay to the Lender, at the time of each monthly payment, one-twelfth (1/12th) of the current annual insurance premiums and to make insurance premium reserve payments in such amounts and at such time or times as the Lender shall require; and (v) to keep the building on the Premises in good repair and in a condition reasonably satisfactory to the Lender. Notwithstanding anything to the contrary, provided that Borrower has not committed an Event of Default, and provided that Borrower timely provides for such payments, the Lender shall not require the Borrower to deposit with Lender any sums to pay the insurance premiums or the water and sewer charges relating to the Premises.

ROS:923960.4/ORI012-251645

(b)   The Borrower further agrees that, should thirty (30) days default be made in the payment of any such tax, insurance premium, assessment, water, rents, or other governmental charges, or in the payment of a premium for such insurance, or should any default be made in the obligation to keep the Premises in satisfactory repair and condition, then the Lender may pay such amount or amounts and the amount so paid shall be added to the amount owing hereunder and shall be due and payable on demand, with interest at the Default Rate defined below.

9.   **LENDER'S RIGHT OF ACCELERATION:**

The Lender may declare the unpaid principal, interest, fees, and other amounts and charges specified under this Note due immediately upon the occurrence of an Event of Default, as defined below.   This right is called acceleration.   Each of the following shall constitute an Event of Default:

(a)   Any report, certificate, financial statement or other instrument furnished in connection with this Note or the borrowing hereunder shall have been proven to be false or misleading; or

(b)   Ten (10) days default in any payment of principal or interest due on this Note; or

(c)   Thirty (30) days default in the payment of any tax, assessment, water, rents, or other governmental charges, or in the payment of a premium for insurance; or

(d)   The Borrower's (i) application for or consent to the appointment of a receiver, trustee or liquidator of the Borrower for all or a substantial part of its properties or assets, (ii) admitting in writing its inability to pay its debts as they mature, (iii) making a general assignment for the benefit of creditors, (iv) being adjudicated a bankrupt or insolvent, or (v) filing a voluntary petition in bankruptcy, or a petition or answer seeking reorganization or an arrangement with creditors or taking advantage of any bankruptcy, reorganization, insolvency, readjustment of debt, dissolution or liquidation law or statute, or an answer admitting the material allegations of a petition filed against it in any proceeding under any such law or if

corporation action shall be taken by the Borrower for the purpose of effecting any of the foregoing; or

(e)    An order, judgment or decree being entered, without the application, approval or consent of the Borrower by any court of competent jurisdiction, approving or seeking reorganization of the Borrower or of all or a substantial part of the properties or assets of the Borrower and such order, judgment or decree continuing unstayed and in effect for any period of sixty (60) days or more; or

(f)    Any cause that gives the Lender the right of acceleration under the Note, Mortgage or Loan Documents; or

(g)    The imposition of a construction or mechanics lien against the Premises, which is not removed by the posting of a bond or other legal means within thirty (30) days of the imposition of same; or

(h)    If Borrower fails to comply with any provision of this Note, the Mortgage, or the Loan Documents, within thirty (30) days after having received notice from the Lender provided that if such default cannot be cured within such thirty (30) day time period, despite Mortgagor's due diligence, such cure period shall be extended for an additional sixty (60) days for such default, so long as Mortgagor is continuing to diligently pursue a cure of such default.   The foregoing notice and cure period shall not apply as to any payment of principal, interest and/or other amounts due under this Note and the Mortgage, and any matters covered by subsections (a) - (g) hereinabove.

The Lender's failure to accelerate for any cause shall not prevent the Lender from doing so for a later cause.

## 10. DEFAULT RATE:

In the event of any Event of Default hereunder or under the Loan Documents, interest as of the date of default shall accrue on the unpaid balance of the Loan at a rate equal to the lesser of (a) fifteen (15%) percent per annum of (b) the highest rate permitted by law ("**Default Rate**").

ROS:923960.4/ORI012-251645

11.   **WAIVER OF FORMAL ACTS:**

The Lender is not required to do any of the following before enforcing the Lender's rights under this Note:

(a)   To demand payment of amounts due (known as Presentment);

(b)   To give notice that amounts due have not been paid (known as Notice of Dishonor); or

(c)   To obtain an official certificate of non-payment (known as a Protest).

12.   **TRIAL BY JURY:**

THE BORROWER AND LENDER AGREE THAT ANY SUIT, ACTION OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT BY LENDER OR THE BORROWER, ON OR WITH RESPECT TO THIS NOTE OR ANY OTHER LOAN DOCUMENT OR THE DEALINGS OF THE PARTIES WITH RESPECT HERETO OR THERETO, SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY.   THE LENDER AND THE BORROWER EACH HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND INTELLIGENTLY, AND WITH THE ADVICE OF THEIR RESPECTIVE COUNSEL, WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING. FURTHER, THE BORROWER WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY SPECIAL, EXEMPLARY, PUNITIVE, CONSEQUENTIAL OR OTHER DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES.   THE BORROWER ACKNOWLEDGES AND AGREES THAT THIS SECTION IS A SPECIFIC AND MATERIAL ASPECT OF THIS NOTE AND THAT THE LENDER WOULD NOT EXTEND CREDIT TO THE BORROWER IF THE WAIVERS SET FORTH IN THIS SECTION WERE NOT A PART OF THIS NOTE.

13.   **RESPONSIBILITY UNDER NOTE:**

If more than one Borrower signs this Note, each one is obligated to pay the amount due under the Note.   This Note is the joint and several obligation of the Borrowers and the Lender may enforce this Note against any one or more Borrowers separately or against all Borrowers together.

14.   **CHANGE:**

This Note cannot be changed except in writing signed by the Borrower and the Lender, except that Lender may grant

ROS:923960.4/ORI012-251645

extensions in the time of payment of and reduction in the rate of interest on the monies due and owed under this Note.

15.  **COST OF COLLECTION:**

If the Lender has to consult an attorney, or go to court, or if the Borrower fails to comply with the terms of this Note, the Borrower will pay all Lender's collection costs, plus reasonable attorneys' fees and disbursements, including, but not limited to any fees incurred in connection with pre-judgment and post-judgment collection costs.

16.  **GOVERNING LAW:**

This Note has been executed and delivered in the State of New Jersey but is encumbering property that is in the Commonwealth of Pennsylvania and is to be construed and enforced according to and governed by the Law of said Commonwealth of Pennsylvania.

17.  **RIGHT OF SETOFF:**

The Lender shall have the right to apply any monies which the Lender may have on deposit against any amounts which may be past due under this Note, or hold as security for the payment hereof any other property heretofore or hereafter delivered by the Borrower into the custody, control or possession of the Lender for any reason or purpose whatsoever.

18.  **ADDITIONAL FINANCING:**

During the term of this Note the Borrower shall not obtain any additional financing or use of credit that would result in a lien on the Premises without first obtaining Lender's consent, which consent may be withheld in Lender's sole discretion.  In the event Borrower violates this covenant, then at the option of the Lender, the unpaid principal, interest, fees, and other amounts and charges under this Note shall be immediately due and payable in full.

19.  **CROSS DEFAULT:**

Any default in any obligation under any of the Loan Documents or any other obligations of Borrower or its assigns, to Lender, whether oral or written, secured or unsecured, and regardless of their nature, and all future obligations, when

ROS:923960.4/ORI012-251645

they are incurred (the "**Obligations**"), shall constitute a default hereunder, giving the Lender the right and option to accelerate this obligation and declare the then unpaid balance due, and shall entitle Lender to declare the Mortgage and accompanying Note which it secures immediately due and payable.    This covenant shall be effective without the execution of any further assurance, amendment of mortgage or any affirmative action by Borrower.    In the event that Borrower shall default hereunder, such default shall constitute a default under the Obligations and Lender at its option, may declare all such Obligations and mortgages immediately due and payable.

20.   **LOAN CHARGES:**

Any and all payments under the Loan Documents, including without limitation, the Interest Rate, Default Rate, late charges, Prepayment Premium and any other charges or amounts due hereunder constitute material covenants of the Loan and are: (1) a material inducement for the Lender to enter into this Loan; (2) the Lender would not have entered into this Loan without the Borrower's agreement and covenant to make the payments as specified in the Loan Documents; (3) some additional payments, such as the Default Rate, are deemed by the Lender as compensation to the Lender for the increased risk associated with this Loan not being timely repaid and (4) the additional payments represent reasonable estimates to the Lender in allocating its resources (both personnel and financial) to the ongoing review, monitoring, administration and collection of the Loan.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.   Lender may choose to make this refund by reducing the principal owed under this Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under this Note.

21.   **ALIENATION:**

In the event that all or any part of the Premises (except leases to residential tenants who occupy the Premises), or any interests comprising twenty (20%) percent or more in the Borrower (except that interests in excess of twenty (20%) percent may be transferred by and among members, spouses of members, issue of members, spouses of issue of members; or trusts, family limited partnerships or limited liability companies established for the benefit of any of the foregoing), shall, during the Loan Term be sold, transferred, assigned or encumbered, then, at the option of the Lender, the unpaid principal, interest, fees, and other amounts and charges under this Note shall be immediately due and payable in full.

22.   **SERVICE OF PROCESS:**

Borrower hereby appoints Theresa Brennan, Esq., an attorney at law of the Commonwealth of Pennsylvania, having an address at 1096 North Church Street, Hazleton, PA 18202 as Borrower's agent for service of process for any matters relating to this Note and the Loan Documents. Borrower covenants that revocation of such appointment shall not be effective unless Borrower provides Lender at least thirty (30) days prior written notice and Borrower simultaneously appoints a substitute agent for service of process, which substitute agent shall be an attorney at law of the Commonwealth of Pennsylvania maintaining an office in the Commonwealth of Pennsylvania.

(SIGNATURE PAGE TO FOLLOW)

ROS:923960.4/ORI012-251645

**23.  SIGNATURE:**

The Borrower agrees to the terms of this Note by signing below.

WITNESS:

HACAG, LLC, a Pennsylvania limited liability company

By: Maygreen Properties, LLC, a Pennsylvania limited liability company

X Robert Maynard

By: _____
    Jonathan S. Greenwald,
    Manager

ROS:923960.4/ORI012-251645

Exhibit "B"

<u>GUARANTY OF PAYMENT AND PERFORMANCE</u>

THIS **GUARANTY OF PAYMENT AND PERFORMANCE**, dated April 28, 2008, by **Jonathan Greenwald**, having an address at 3370 NE 190th Street, Aventura, Florida 33180, **Robert Maynard**, having an address at 330 W. 55th Street, New York, NY 10019, and **Maygreen Properties, LLC**, having an address at 112 Pocono Blvd., Suite 15, Mount Pocono, Pennsylvania 18344 (collectively referred to as the "**Guarantor**" or "**Guarantors**" depending upon the context) in favor of **ORITANI SAVINGS BANK,** having an office at 370 Pascack Road, P.O. Box 1329, Township of Washington, New Jersey 07676-1329 (the "**Lender**").

FOR VALUABLE CONSIDERATION, and to induce Lender in its discretion to make loans, credits or other financial accommodations at any time and from time to time to **HACAG, LLC,** a Pennsylvania limited liability company (collectively referred to as the "**Borrower**"), the Guarantor hereby agrees as follows:

I. <u>Guaranty</u>. The Guarantor hereby irrevocably and unconditionally guarantees to the Lender the prompt payment when due, whether by acceleration or otherwise, of all present or future obligations or liabilities of any and all kinds of the Borrower to the Lender, whether incurred by the Borrower as maker, endorser, drawer, acceptor, guarantor, accommodation party or otherwise, due or to become due, otherwise secured or unsecured, absolute or contingent, joint or several, and howsoever or whensoever acquired, including, but not limited to, certain obligations of the Borrower to the Lender evidenced by a certain Mortgage Note of even date herewith in the principal amount of **ONE MILLION NINE HUNDRED TWENTY THOUSAND AND 00/100 ($1,920,000.00) DOLLARS** (the "**Note**"), secured by a certain Mortgage of even date

-1-

herewith in the principal amount of **ONE MILLION NINE HUNDRED TWENTY THOUSAND AND 00/100 ($1,920,000.00) DOLLARS** (the **"Mortgage"**), and all installments thereof together with interest on the unpaid principal balance of each said obligation at the rate provided therein and all costs, expenses and reasonable attorneys' fees incurred or paid by the Lender in connection therewith and unconditionally guarantees to Lender the due performance of all of the Borrower's obligations under the Mortgage, Note, the Assignment of Leases and Rents, and the Governmental Compliance Warranty and Indemnification Agreement (as each is defined in the Mortgage; herein collectively referred to as the **"Obligations"**). All payments by the Guarantor shall be paid in lawful money of the United States.

Notwithstanding anything to the contrary contained herein, upon the satisfaction of (A) the lease structure at the Premises (as defined in the Mortgage) being converted from a ten (10) month period to a twelve (12) month period and (B) the Premises achieving a 1.20:1 debt service coverage ratio for a period of twelve (12) consecutive months, using the Lender's standard debt service coverage underwriting procedures, the definition of Obligations shall be revised and limited to the following:

> (a) any rents or other income from the Premises received by the undersigned after default under any of the Loan Documents which are not applied to the fixed and operating expenses of the Premises; (b) any loss resulting from the warehousing of vacant apartments at the Premises; (c) for any security deposit of tenants not turned over to the holder of the Note upon foreclosure or sale pursuant to power of sale or for any misapplication of security deposits, prepaid rents or

other similar sums paid to or held by the Borrower or any other entity or person in connection with the operation of the Premises; (d) any intentional destruction or legal waste committed by the Borrower with respect to the Premises; (e) any loss by Mortgagee arising from a failure to maintain the insurance specified in the Loan Documents; (f) any insurance or condemnation proceeds or other similar funds or payments applied by the Borrower in a manner other than as expressly provided in the instruments or agreements by which the Note is secured; and (g) all costs and expenses, including reasonable fees and out of pocket expenses of attorneys and expert witnesses, incurred by Lender in enforcing its rights under this Guaranty.

Anything in this Guaranty or any other of the Loan Documents to the contrary notwithstanding, this provision partially limiting liability SHALL BECOME NULL AND VOID and shall be of no further force and effect, and Guarantor shall be fully liable for all sums due under the Note and Mortgage, in the event: (a) that there shall be any breach or violation of the Borrower's agreement as specified in the Mortgage not to, directly or indirectly, due to assignment of beneficial interest under a trust partnership, interest under a trust, partnership, interest in a partnership, or otherwise, cause or permit any sale, transfer or conveyance of the Premises or any of the ownership interest of Borrower, or create suffer or permit any encumbrance or lien on the Premises other than the lien of any instrument or agreement by which the Note is secured, the lease of the Premises assigned to the holder of the Note and such other transfers, liens or encumbrances, if any, as are expressly permitted under any instrument or agreement by which the Note is secured and other than a non-material breach or

violation of such paragraphs such as the granting of any utility or other easement or servitude burdening the Premises; (b) of any fraud or willful misrepresentation by the Borrower regarding the Premises, the making or delivery of the Note or any other instrument or agreement by which it is secured or in any materials or information provided by the Borrower in connection with the loan evidenced hereby; (c) the Borrower files for protection under the United States Bankruptcy Code or similar state law (either voluntarily or involuntarily); or (d) after monetary default the Borrower brings any legal action or otherwise acts in a manner that delays, hinders or interferes with the Lender's ability to realize the benefits of the Loan Documents or to pursue any of its rights or remedies thereunder.

Notwithstanding anything to the contrary set forth in this Guaranty, the provisions above partially limiting the personal liability of the Guarantors shall not:

(a) limit or impair the lien or enforcement of any other instrument or agreement by which the Note is secured or the right of the holder of the Note to collect all sums due hereunder or thereunder except as expressly limited by this Section;

(b) cause the failure of the Borrower to make all payments or principal, interest and premium or to perform any obligations under any instrument or agreement by which the Note is secured within the time periods provided therein from being an Event of Default thereunder;

(c) be construed as limiting the obligations of the Borrower under any lease for the Premises;

-4-

(d)   limit the Borrower's, or any indemnitor's personal liability for its obligations under the Governmental Compliance Warranty and Indemnification Agreement and hold the holder of the Note harmless from any loss or damage from any Hazardous Material that exists upon or is discharged from the Premises and other matters as may be specified in such Governmental Compliance Warranty and Indemnification Agreement delivered in connection with the Note;

(e)   release or impair the indebtedness evidenced by the Note, or the conveyance by the Mortgage, or lien of the Mortgage upon, the property conveyed and/or encumbered by the Mortgage; or

(f)   preclude or forestall the Lender from foreclosing on the Mortgage in case of any Event of Default or from enforcing any of Mortgagee's rights or remedies in law or in equity, including without limitation, the Mortgagee's rights or remedies with respect to any leases, rents issues, profits or income assigned or mortgaged to Mortgagee pursuant to the Loan Documents; the appointment of a receiver for all or any portion of the property conveyed or encumbered by the Mortgage; or foreclosing the Mortgage, except as expressly stated in this Section; or

(g)   prejudice the right of the Mortgagee as against any other entity now or hereafter liable for the payment of the indebtedness evidenced hereby or liable, under any guaranty, bond, policy of insurance or other agreement, for compliance with any of the terms, covenants or conditions of the Note or the Mortgage.

II. **Guaranty Absolute**.  The Guarantor guarantees that the Obligations will be paid and performed strictly in accordance with the terms thereof, regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of the Lender with respect thereto.  The liability of the Guarantor under this Guaranty shall be absolute and unconditional irrespective of:

A.    any lack of validity or enforceability of the documents evidencing the Obligations or any other agreement or instrument relating thereto;

B.    any change in the time, manner, place or amount of payment of, or in any other term of, all or any of the Obligations, or any other amendment or waiver of or any consent to departure from the terms of the documents evidencing the Obligations;

C.    any exchange, release or non-perfection of any collateral, or any release or amendment or waiver of or consent to departure from any other guaranty, for all or any of the Obligations;

D.    any settlement or compromise with the Borrower or any other person of any of the Obligations hereby guaranteed;

E.    any other circumstance which might otherwise constitute a defense available to, or a discharge of, the Borrower in respect of the Obligations or the Guarantor in respect of this Guaranty; or

F.    any failure to record the Obligations or file any UCC
financing statement or to otherwise perfect, protect, secure
or insure any security interest or lien given as security for
the Note; and, in any such case whether with or without
notice to Guarantor and with or without consideration.

This Guaranty shall continue to be effective or be reinstated, as
the case may be, if at any time any payment of the Obligations is
rescinded or must otherwise be returned by the Lender upon the
insolvency, bankruptcy or reorganization of the Borrower or
otherwise, all as though such payment had not been made.

III.  **Waiver**.    The Guarantor hereby waives promptness,
diligence, notice of acceptance and any other notice with respect
to the Obligations and this Guaranty and any requirement that the
Lender exhaust any right or take any action against the Borrower
or any other person or entity or any collateral.

IV.  **Enforceability**.   Guarantor will cause the Borrower to
maintain and preserve the enforceability of the Note and
Obligations as the same may be modified and will not permit the
Borrower to take or to fail to take actions of any kind, the
taking of which or the failure to take which might be the basis
for a claim that any Guarantor has a defense to Guarantor's
obligations hereunder other than performance of such obligations
in accordance with the terms of the instruments imposing the same.

V.  **Indemnification**.   Guarantor agrees to indemnify Lender
against loss, cost or expense caused by the assertion by the
Borrower of any defense to its obligations under the Note or
Mortgage or any assertion by Guarantor of any defense to
Guarantor's obligations hereunder.   Guarantor waives any right or

-7-

claim of right to cause a marshalling of the Borrower's assets or to cause Lender to proceed against any of the security for the Note or for the obligations guaranteed hereby before proceeding against Guarantor or to proceed against Guarantor in any particular order; Guarantor agrees that any payments required to be made by Guarantor hereunder shall become due on demand in accordance with the terms hereof immediately upon the happening of any default under the Note or Mortgage; Guarantor expressly waives and relinquishes all rights and remedies accorded by applicable law to guarantors.

VI. **Subrogation**. The Guarantor will not exercise any rights which it may acquire by way of subrogation under this Guaranty, by any payment made hereunder or otherwise, until the Obligations shall have been paid in full. If any amount shall be paid to the Guarantor on account of such subrogation rights at any time when the Obligations shall not have been paid in full, such amount shall be paid to the Lender to be credited and applied upon the Obligations, whether matured or unmatured, in accordance with the terms thereof.

VII. **Representations and Warranties**. The Guarantor hereby represents and warrants as follows:

(a) No authorization, consent, approval, license, exemption of or filing or registration with any court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, is or will be necessary to the valid execution, delivery or performance by the Guarantor of this Guaranty.

(b) This Guaranty has been duly authorized and executed by

Guarantor and constitutes the legal, valid and binding obligation of the Guarantor, enforceable against the Guarantor in accordance with its terms.

(c)  The Guarantor expects to derive advantage from each and every financial accommodation granted by the Lender to the Borrower and represents that each such accommodation and this Guaranty will be in furtherance of the Guarantor's purposes.

VIII.  **Acceleration**.   The Guarantor agrees that, if the maturity of the Obligations hereby guaranteed is accelerated, by bankruptcy or otherwise, as against the Borrower, such maturity shall also be deemed accelerated for the purposes of this Guaranty, and without demand upon or notice to the Guarantor.

IX. **Amendments, Waivers and Consents**.  No amendment or waiver of any provision of this Guaranty, nor consent to any departure by the Guarantor therefrom shall in any event be effective unless the same shall be in writing and signed by the Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

X. **Notices**.   All notices required or permitted hereunder shall be in writing and delivered, telegraphed or mailed, certified mail, to each party at its address set forth herein or at such other address as may be designated in writing.   All such notices shall be effective on the date on which delivered or telegraphed or, if mailed by certified mail, on the third business day after the day on which mailed.

XI. **No Waiver; Cumulative Remedies**.  No failure on the part of the Lender to exercise, and no delay in exercising, any right

hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.   The remedies provided herein and in all other agreements between the Guarantor and the Lender are cumulative and not exclusive of any remedies provided herein, therein or by law.   It shall not be necessary as a condition to enforcement of this Guaranty, that suit be first instituted against the Borrower or that any rights or remedies against the Borrower be first exhausted.

XII.   **Right of Set-Off; Security Interest**.   The Lender is hereby authorized at any time and from time to time, without notice to the Guarantor (any such notice being expressly waived by the Guarantor), to set off and apply to any overdue and unpaid Obligations:   (i) any amounts which the Bank from time to time may owe to the Guarantor, including any balance or share of any general or special deposit, certificate of deposit, savings certificate or other account (regardless of the source or intended use of any funds in such account), and (ii) any other property, tangible or intangible, owned by or in which the Guarantor has an interest which may be in the possession, in which accounts and other property the Guarantor hereby grants the Lender a security interest.   This right is in addition to and not in limitation of any other rights, including rights of set-off, which the Lender may have by law.

XIII. **Further Assurances**.   The Guarantor agrees that at any time or from time to time upon the written request of the Lender, it will promptly execute and deliver any and all such further instruments and documents, including, without limitation, financial statements of the Guarantor, and do such further acts as the Lender may reasonably request in order to more effectively

carry out the purposes hereof.

XIV. **Continuing Guaranty; Assignment**. This Guaranty is a continuing guaranty and shall: (i) remain in full force and effect until payment in full of the Obligations and all other amounts payable under this Guaranty, (ii) extend to and cover every extension or renewal of, and every obligation accepted in substitution for, the Obligations hereby guaranteed, (iii) be binding upon the Guarantor, its successors and assigns, and (iv) inure to the benefit of and be enforceable by the Lender and its successors, transferees and assigns.

XV. **Other Guarantors**. All persons comprising Guarantor shall be jointly and severally liable hereunder, and jointly and severally liable with all other guarantors of the Obligations.

XVI. **Governing Law**. This Guaranty shall be governed by, and construed, at the Lender's election, in accordance with the laws of the State of New Jersey or the laws of the Commonwealth of Pennsylvania. In the event that the Lender brings any action hereunder in any court of record of New Jersey or the Federal Government, the Guarantor consents to and confers personal jurisdiction over the Guarantor by the courts of the State of New Jersey and agrees that service of process may be made upon the Guarantor by mailing a copy of said process to the Guarantor; and in any action hereunder the Guarantor waives the right to demand trial by jury.

XVII. **Service of Process**. Guarantor shall be served c/o Theresa Brennan, Esq., an attorney at law of the Commonwealth of Pennsylvania, having an address at 1096 North Church Street, Hazleton, PA 18202 or by constructive service as provided for by

**ACKNOWLEDGEMENT**

STATE OF NEW JERSEY

SS.:

COUNTY OF ESSEX

On this 28th day of April, 2008, before me, the undersigned, personally appeared Jonathan Greenwald, who, I am satisfied, is the person who signed the foregoing instrument, and he did acknowledge under oath that he signed, and delivered the same and that the foregoing instrument is a voluntary act and deed.

ELEANOR S. GILLILAND
Notary Public of New Jersey
Commission Expires 9/22/2009

STATE OF NEW JERSEY

SS.:

COUNTY OF ESSEX

On this 28th day of April, 2008, before me, the undersigned, personally appeared Robert Maynard, who, I am satisfied, is the person who signed the foregoing instrument, and he did acknowledge under oath that he signed, and delivered the same and that the foregoing instrument is a voluntary act and deed.

**ACKNOWLEDGEMENT**

ELEANOR S. GILLILAND
Notary Public of New Jersey
Commission Expires 9/22/2009

STATE OF NEW JERSEY

SS.:

COUNTY OF ESSEX

On this 28th day of April, 2008, before me, the undersigned, personally came and appeared Jonathan Greenwald, the Manager of Maygreen Properties, LLC, a Pennsylvania limited liability company and known to me to be, and who I am satisfied is the person described in and who executed the foregoing instrument, and I having made known to him the contents thereof, did duly acknowledge to me that they signed, sealed and delivered the same voluntarily, the Manager of Maygreen Properties, LLC, for the uses and purposes therein expressed.

ELEANOR S. GILLILAND
Notary Public of New Jersey
Commission Expires 9/22/2009

-13-

the Rules of Court for any matters relating to this Guaranty and the loan Documents.

WITNESS:

_____

~~Theresa Brennan, Esq.~~
Witness to all three (3)
signatures

*Allen J. Popovits, Esq.*

GUARANTOR:

_____

Jonathan S. Greenwald,
Individually

_____

Robert Maynard, Individually

Maygreen Properties, LLC, a
Pennsylvania limited liability
company

By: _____

      Jonathan S. Greenwald,
      Manager

Court Name: District Court
Division: 3
Receipt Number: 333028483
Cashier ID: tscott
Transaction Date: 03/18/2013
Payer Name: WEIR AND PARTNERS
------------------------------------
CIVIL FILING FEE
 For: WALTER WEIR
 Amount:        $350.00
------------------------------------
Paper Check Conversion
 Check/Money Order Num: 59965
 Amt Tendered: $350.00
------------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


Only when bank clears the check or
verifies credit of funds is the fee
or debit officially paid or
discharged. A $53.00 fee will be
charged for returned checks.